USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/12/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

CESAR MATEO,

                Plaintiff,

-against-

KEVIN O'CONNOR, JEFFREY MACISAAC,
and STEVEN PURCELL,

                Defendants.

------------------------------------------------------------

08 Civ. 11053 (RJH) (DCF)

**MEMORANDUM OPINION
AND ORDER**

Richard J. Holwell, District Judge:

    Cesar Mateo ("Mateo"), a prisoner currently incarcerated at the Great Meadow Correctional Facility ("Great Meadow"), has brought several actions *pro se* against various prison officials pursuant to 41 U.S.C. § 1983 ("Section 1983"). In this case, Mateo is suing three employees of the New York State Department of Correctional Facilities ("DOCS"): Corrections Sergeant Kevin O'Connor ("O'Connor"), Corrections Officer Jeffrey MacIsaac ("MacIsaac"), and Corrections Officer Steven Purcell ("Purcell").[1] All three defendants worked at the Green Haven Correctional Facility ("Green Haven") while Mateo was incarcerated there from 2003 to 2008. Mateo raises claims of harassment and retaliation against O'Connor, MacIsaac, and Purcell. Defendants have moved to dismiss the complaint in its entirety. For the reasons that follow, the Court grants defendants' motion.

---

[1] In his complaint, plaintiff names as a defendant Corrections Officer "Palcer"; elsewhere in the complaint the defendant is referred to as "Parcel." Plaintiff does not now dispute that "Purcell" is the correct spelling of that defendant's name. (*See* Defs.' Br. 1 n.1; Pltf.'s Opp. 4.)

1

**BACKGROUND**

For purposes of this motion, the following facts are taken as true.

Mateo originally filed this lawsuit in the Northern District of New York, on August 22, 2008.[2] (*Mateo v. O'Connor*, No. 08-0923 (DNH) (N.D.N.Y. filed Aug. 22, 2008), Compl.)  Because the complaint's allegations involved incidents at Green Haven, which is in this district, the case was transferred here.  (*Id.*, Order dated Sept. 18, 2008.)

The complaint alleges that defendants harassed, threatened, and retaliated against Mateo for writing letters about and filing grievances against various prison employees. On August 21, 2008, Mateo says he was en route to a hearing in connection with a grievance he had previously filed against two other prison officers[3] when defendant MacIsaac told him to "not ever write grievances against H-Block staffs [or] that I will get fuck[ed] up."  (Compl. ¶ 9.)  Later, when Mateo returned to his cell in the H-Block, MacIsaac ordered Mateo to "stand hands against the wall."  (*Id.*)  Purcell looked on as another officer "positioned himself behind" Mateo, "pressing his hand against the back of [Mateo's] head forward [with] a hand on [his] back."  (*Id.*)  A fourth officer pat-frisked

---

[2] The docket sheet indicates that Mateo filed his complaint on August 27, 2008.  In the Second Circuit, "for statute of limitations purposes, a pro se prisoner's complaint is deemed filed on the date that the prisoner 'turn[s] his complaint over to prison officials' for transmittal to the court, not when the court actually receives it." *Abbas v. Dixon*, 480 F.3d 636, 638 n.1 (2d Cir. 2007) (quoting *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), *modified on other grounds*, 25 F.3d 81 (2d Cir.1994)).  District courts have applied that rule in assessing whether claims have been exhausted prior to bringing suit. *See Dimodica v. U.S. Dep't of Justice*, No. 05-2165, 2006 WL 89947, at *3 (S.D.N.Y. Jan. 11, 2006) (Lynch, J.).  Thus the Court deems Mateo's complaint filed when he turned it over to prison officials, which occurred sometime between August 22, when he signed it, and August 25, when it was postmarked.

[3] Mateo filed a separate lawsuit against those two officers, which, like this case, was transferred from the Northern District of New York to this district.  *See Mateo v. Alexander et al.*, 08-8797 (RJH).  Earlier this year that action was dismissed without prejudice for failure to exhaust administrative remedies.  *See Mateo v. Alexander*, No. 08-8797 (RJH), 2010 WL 431718, at *4 (S.D.N.Y. Feb. 9, 2010).

2

Mateo, while MacIsaac stood next to Mateo and purportedly told him that he "can fuck me up, knock off my teeth, that it will happen to me right in this place, that for writing grievances." (*Id.*)

Back in his cell, Mateo noticed the power and water had been cut off. (*Id.* ¶ 10.) He drafted a letter of complaint to the prison superintendent and walked to lunch with the letter. (*Id.*) Noticing Mateo's letter, MacIsaac asked if it contained a grievance. (*Id.*) Mateo said no. (*Id.*) After afternoon recreation, Mateo returned to his cell to find MacIsaac and two other officers standing at the cell door. (*Id.*) The cell itself "was a mess": clothes strewn on the floor, mattress folded in half, "mail ripped and scattered on the floor." (*Id.*) MacIsaac said "that is what happen[s] when you write grievances." (*Id.*) Mateo drafted a second letter of complaint about this latest incident. (*Id.*)

On August 22, 2008, Mateo walked out of his cell for breakfast, mail in hand. (*Id.* ¶ 11.) Again MacIsaac noticed the mail and asked if Mateo was holding grievances; again Mateo said no. (*Id.*) MacIsaac called O'Connor over, and O'Connor asked Mateo to go back to his cell. (*Id.*) Later, an officer came to Mateo's cell and demanded that he pack up his property and move to G-Block. (*Id.*) During the move to G-Block, O'Connor "harass[ed]" him and told him that he "know[s] better not to write grievances." (*Id.* ¶ 12.) That night, Mateo was given a "fabricated, retaliatory misbehavior report" signed by MacIsaac, O'Connor, and other prison officers.

A few days later, Mateo brought this action.

3

**DISCUSSION**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires that prisoners exhaust all available administrative remedies before pursuing a lawsuit in federal court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (exhaustion is required for "all inmate suits about prison life"); *Booth v. Churner*, 532 U.S. 731, 734 (2001) (exhaustion required before filing a Section 1983 claim for monetary damages even though monetary damages are unavailable as an administrative remedy). To properly exhaust a claim, a prisoner must comply with state grievance procedures.[4] *Jones v. Bock*, 549 U.S. 199, 218 (2007). Merely "[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion." *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (internal quotation marks and citation omitted). Nor does an "untimely or procedurally defective" administrative grievance. *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006).

---

[4] New York provides a three-tiered grievance procedure for inmates: first, the prisoner files a grievance with the Inmate Grievance Resolution Committee ("IGRC"). 7 N.Y. Comp. Codes R. & Regs. § 701.5(a)(2) (2009). Second, the prisoner may appeal an adverse IGRC decision to the facility superintendent, and third, the prisoner may appeal an adverse decision by the superintendent to the Central Office Review Committee ("CORC"). *Id.* §§ 701.5(b)–(d). An expedited procedure exists for grievances that allege harassment by prison staff: the grievance is sent directly to the superintendent, and, if the grievance "is a bona fide harassment issue, the superintendent must initiate or request an investigation and render a decision, after which the prisoner could then appeal to the CORC." *Id.* § 701.8(c)–(d); *see Espinal v. Goord*, 558 F.3d 119, 125 (2d Cir. 2009) (internal citation omitted). In the absence of any decision, the prisoner can appeal directly to CORC within twenty-five days. 7 N.Y. Comp. Codes R. & Regs. § 701.8(g).

When a prisoner fails to properly exhaust his administrative remedies before filing suit, the action must be dismissed. *See Burgos v. Craig*, No. 06-5505, 2008 WL 5210890, at *1 (2d Cir. 2008) ("[Exhaustion] must be completed before suit is filed, and completing the exhaustion requirements only after filing suit is insufficient."); *Neal v. Goord*, 267 F.3d 116, 121–22 (2d Cir. 2001), *abrogated in part on other grounds by Porter*, 534 U.S. 516. This is so even if the claim has since been exhausted. *See Mateo v. Alexander*, No. 08-8797 (RJH), 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010); *Mendez v Artuz*, No. 01-4157 (GEL), 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002).

Exhaustion is an affirmative defense, so inmates need not specially plead or demonstrate it in their complaint. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). For that reason it is often a matter best left for resolution at the summary judgment stage. But dismissal under Rule 12(b)(6) is justified where non-exhaustion is clear from the face of the complaint. *Shaw v. City of New York*, No. 08-3997, 2009 WL 1110789, at *3 (S.D.N.Y. Apr. 21, 2009) (quoting *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)). Where it is not clear, the court may convert the defendant's motion to one for summary judgment "limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *McCoy*, 255 F. Supp. 2d at 251; *see* Fed. R. Civ. P. 12(b).

When the court converts a Rule 12(b)(6) motion into one for summary judgment, it must "afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks omitted). Still, it need not give formal notice of its intention if "the parties were . . . apprised of the

5

likelihood of conversion by less formal or direct means and, in fact, had a sufficient opportunity to present the materials relevant to a summary judgment motion." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. 2004); *see In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985) ("The essential inquiry is whether the [nonmovant] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.").

   In this case, non-exhaustion is evident from the complaint itself. Mateo alleges that he was harassed and threatened on August 21 and 22, 2008; his complaint was dated August 22 and postmarked three days later. Exhaustion would have been impossible in so short a time frame. Indeed, Mateo implicitly acknowledges his failure to exhaust when he requests exemption or excusal from the requirement. (Pltf.'s Opp. 4.) Still, in an abundance of caution, the Court will assume that non-exhaustion is not absolutely clear from the face of the complaint and convert the motion to one for summary judgment, limited to the narrow question of exhaustion. Formal notice to the parties is unnecessary here. Defendants attached to their motion a record of Mateo's grievances and appeals, called a "CORC list." (*See* Bellamy Decl. Ex. A.) They also notified Mateo that the Court might choose to treat the motion as one for summary judgment, and that to oppose it, Mateo would need to submit evidence, such as affidavits. All parties were on notice of the possibility of conversion.

   The CORC list submitted by the defendants confirms that Mateo did not file a grievance between the events of August 21 and 22, 2008, and the filing of his complaint a few days later. Mateo does not disagree. His complaint does say that he has "brought to

6

the attention of High Correction Official this practice of retaliation and harassment by staff[]." (Compl. ¶ 14.)  But merely "alerting the prison officials as to the nature of the wrong for which redress is sought . . . does not constitute proper exhaustion." *Macias*, 495 F.3d at 44 (internal quotation marks and alterations omitted); *see Woodford*, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.").  In addition, Mateo claims that, after filing this lawsuit, he "also filed a grievance with the facility IGRC seeking administrative relief to no avail, and though the whole biased process of it took longer than 90 days to receive[] a superintendent decision, [he] then immediately appealed it to CORC which never responded to it." (*Id.*)  Even assuming that the plaintiff pursued those remedies,[5] he concedes he did so only after filing a federal lawsuit.  In such circumstances, barring the applicability of an exception to the exhaustion requirement, dismissal is required.  Dismissal is without prejudice, and the case may be "re-filed, if the plaintiff wishes, with the addition of paragraphs explaining how administrative remedies have been exhausted." *Mendez*, 2002 WL 313796, at *2; *see Alexander*, 2010 WL 431718, at *3–*4.

There are three caveats to dismissing claims as unexhausted.  First, exhaustion is not required for administrative remedies that are not available to the prisoner. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).  Second, defendants may forfeit the affirmative defense of non-exhaustion, either by waiving it or by acting in such a way as

---

[5] According to the defendants' CORC list, Mateo filed a grievance on August 11, 2008; the next grievance reflected in that record was filed on September 9, 2008.  Mateo filed additional grievances on September 15, September 22, September 24, and October 1.  It is unclear which of these grievances addressed the allegations at issue in this action.

to estop them from raising it. *Id.* Third, "the court should consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'" *Id.* (quoting *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004)).[6]

Mateo asks that the Court "excuse or exempt" him from the exhaustion requirement, because the defendants have a reputation as "abusive, brutish, [and] racist"; because, "acting in collusion with their comrades," they "belligerently harassed, retaliated [against], intimidated and threatened [him] with physical harm"; and because O'Connor "ha[s] a history of harassing and threatening" Mateo. (Pltf.'s Opp. 4–5.) Mateo also says, without elaboration, that defendants' conduct has caused him "to fear for an immediate danger to [his] life, health and safety." (*Id.* 5.) Construed liberally, these are arguments in favor of applying all three exceptions in this case. But the problem for Mateo is that he has represented to the Court that he did file a grievance about these very incidents.[7] That cuts against applying any exception here.

---

[6] There is some doubt about whether *Woodford v. Ngo*, 548 U.S. 81 (2006), changed things. In *Woodford*, the Supreme Court held that prisoners must "properly" exhaust administrative remedies, which entails "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90–91. Courts in this circuit have acknowledged the tension between *Woodford* and the *Hemphill* analysis, but have continued to use the *Hemphill* test in the absence of circuit authority to the contrary. *See Macias v. Zenk*, 495 F.3d 37, 43 n.1 (2d Cir. 2007) (deciding not to decide "what effect *Woodford* has on *Hemphill*'s holding that where administrative procedures are confusing 'a reasonable interpretation of prison grievance regulations may justify an inmate's failure to follow procedural rules to the letter.'") (quoting *Hemphill*, 380 F.3d at 690); *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 178 (2d Cir. 2006) ("We need not determine what effect *Woodford* has on our case law."); *Winston v. Woodward*, No. 05-3385 (RJS), 2008 WL 2263191, at *6 (S.D.N.Y. May 30, 2008) (applying the three exceptions). This Court will do likewise.

[7] Mateo says he filed the grievance in "August, 2008." As noted above, *supra* n.5, the defendants' CORC list contains no record of a grievance filed in late August 2008— although it does list grievances filed throughout September 2008. To the extent this

Administrative remedies may be "effectively unavailable" for exhaustion purposes where "threats or other intimidation by prison officials . . . deter a prisoner of 'ordinary firmness' from filing an internal grievance." *Hemphill*, 380 F.3d at 688; *cf. Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) ("To be 'available' under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of.'") (quoting *Booth*, 532 U.S. at 738). But they could not have been unavailable to Mateo if, as he claims, he resorted to them soon after filing this lawsuit. *See Harrison v. Goord*, No. 07-1806 (HB), 2009 WL 1605770, at *6 (S.D.N.Y. June 9, 2009) (finding that administrative remedies were available where, despite plaintiff's claims that he had been threatened, he still filed grievances); *Winston v. Woodward*, No. 05-3385 (RJS), 2008 WL 2263191, at *8 (S.D.N.Y. May 30, 2008) (the fact that plaintiff filed an appeal using the Inmate Grievance Complaint form "undercut[s] his claims that an appeal was functionally unavailable to him"); *Amador v. Superintendents of Dept. of Correctional Servs.*, No. 03-0650 (KTD), 2007 WL 4326747, at *8 (S.D.N.Y. Dec. 4, 2007) ("[T]he fact that three of the Plaintiffs filed formal grievances directly cuts against Plaintiffs' argument that the process is unavailable . . . ."). Mateo claims that filing a grievance would have put him at risk of serious harm. But this is not a "plausible claim for relief." *LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 476 (2d Cir. 2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). It is not plausible for Mateo to claim, simultaneously, that he was too fearful to file a grievance in late August 2008 and

---

amounts to a disputed issue of fact, it is not material to resolution of the motion. *Cf. Ruggiero*, 467 F.3d at 178 (disregarding a contested fact as immaterial and finding that plaintiff's claims were unexhausted). On what Mateo has conceded are the facts, he utilized the internal grievance procedure within, at most, a week of filing a federal lawsuit. He cannot now claim that exceptions to the exhaustion requirement apply.

that he did file one in late "August 2008" (Pltf.'s Opp. 4), especially where records reflect that he filed several grievances the following month (Bellamy Decl. Ex. A). *See Hemphill*, 380 F.3d at 686 (directing courts to assess the three exceptions to exhaustion "in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA"); *Winston*, 2008 WL 2263191, at *10 (finding that the plaintiff "failed to meet his burden under *Hemphill* of demonstrating 'special circumstances'"); *Verley v. Wright*, No. 02-1182 (PKC), 2007 WL 2822199, at *8 (S.D.N.Y. Sept. 27, 2007) ("[P]laintiff has failed to demonstrate that the administrative remedies were not, in fact, 'actually available to him.'") (quoting *Hemphill*, 380 F.3d at 686).

Estoppel is similarly unavailing. True, defendants MacIsaac and O'Connor allegedly threatened to harm Mateo should he file any more grievances. Two of the defendants, MacIsaac and O'Connor, are said to have threatened to harm Mateo should he write any more grievances. MacIsaac said Mateo would "get fuck[ed] up" if he wrote grievances and suggested he could "fuck [Mateo] up" and "knock off [his] teeth" for doing so. Somewhat more obliquely, O'Connor told Mateo that he knew better than to write grievances. These are threats of the sort that could estop defendants from raising the non-exhaustion defense. *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 178 (2d Cir. 2006) (estoppel is warranted in cases where an "affirmative act by prison officials . . . prevented [the inmate] from pursuing administrative remedies"). But in this case, the threats were of no consequence. By his own admission, Mateo was not prevented from following the prison's internal grievance procedure. Instead, Mateo did pursue administrative remedies; the problem was that he sought relief in this Court too. Thus

estoppel is not warranted here.  *See McCullough v. Burroughs*, No. 04-3216 (FB), 2005 WL 3164248, at *4 (E.D.N.Y. 2005) (estoppel requires "reasonable reliance" and "detriment"); *Berry v. City of New York*, No. 00-2834, 2002 WL 31045943, at *8 (S.D.N.Y. June 11, 2002) (Francis, M.J.) ("[T]he fact that the plaintiff actually did file several grievances and was successful in at least one case belies the notion that this statement led him to believe that the filing of a grievance was impossible or futile.") (internal quotation marks and alterations omitted).

      Finally, Mateo has not alleged any special circumstances, such as a reasonable misunderstanding of the grievance procedure, which would justify his failure to exhaust administrative remedies.  *Cf. Giano*, 380 F.3d at 677; *Brownell v. Krom*, 446 F.3d 305, 313 (2d Cir. 2006) (special circumstances existed where "prison officials erroneously refused to investigate the circumstances" of plaintiff's claim, "frustrated administrative appellate review of th[e] error," and, plaintiff "reasonably believed he could not raise the new facts [he had] discovered in administrative proceedings").

## CONCLUSION

Defendants have adequately demonstrated that Mateo failed to exhaust his administrative remedies before filing suit in federal court, and plaintiff has not plausibly explained why any exception to exhaustion should apply. For the reasons given above, the action is dismissed without prejudice.

SO ORDERED.

Dated: New York, New York
       August 12, 2010

Richard J. Holwell
United States District Judge